BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICE OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Tel: (661) 586-3724
brent@lawofficenewell.com

Attorney for Plaintiffs
Committee for a Better Arvin,
Medical Advocates for Healthy Air,
and Sierra Club

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency, and MICHAEL MARTUCCI, in his official capacity as Acting Regional Administrator for Region 9 of the United States Environmental Protection Agency,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

COMPLAINT

# INTRODUCTION

1. Plaintiffs Committee for a Better Arvin, Medical Advocates for Healthy Air, and the Sierra Club (collectively "Air Advocates") file this Clean Air Act citizen suit to compel Defendants to perform their nondiscretionary duty and protect public health in the San Joaquin Valley of California.

2. Air pollution in the San Joaquin Valley is a public health crisis. The American Lung Association ranks Valley counties among the worst in the United States for ozone and fine particulate matter with an aerodynamic diameter of 2.5 microns or less ("PM2.5").

3. The Clean Air Act is a model of cooperative federalism, whereby EPA sets health-based National Ambient Air Quality Standards and the states develop the plans and strategies to attain those standards by the applicable attainment dates. States submit their plans and strategies to EPA for review and approval as part of the California State Implementation Plan ("SIP"). EPA shall approve a SIP revision if it meets the Act's minimum requirements. EPA and citizens may enforce the EPA-approved SIP as a matter of federal law to hold states and regulated entities accountable.

4. Defendants United States Environmental Protection Agency ("EPA"), Lee Zeldin, and Michael Martucci have violated, and continue to violate, the Clean Air Act by failing to approve, disapprove, or partially approve/disapprove the San Joaquin Valley Unified Air Pollution Control District Ozone Contingency Measure State Implementation Plan Revision for the 2008 and 2015 8-hour Ozone Standards ("Contingency Measure Plan").

5. Defendants have violated, and continue to violate, the Clean Air Act by failing to approve, disapprove, or partially approve/disapprove San Joaquin Valley Unified Air Pollution Control District Rule 3172 which implements the Clean Air Act section 185 stationary source fee program for the 2008 8-hour ozone standard ("Rule 3172").

6. Defendants have violated, and continue to violate, the Clean Air Act by failing to approve, disapprove, or partially approve/disapprove San Joaquin Valley Unified Air Pollution Control District Rule 3173 which implements the Clean Air Act section 185 stationary source fee program for the 2015 8-hour ozone standard ("Rule 3173").

COMPLAINT

1

7. Defendants shall take final action on the Contingency Measure Plan as it relates to the 2008 8-hour ozone National Ambient Air Quality Standard ("NAAQS" or "standard") in the Valley, by full or partial approval or disapproval, by October 16, 2025.

8. Defendants shall take final action on the Contingency Measure Plan as it relates to the 2015 8-hour ozone standard in the Valley, by full or partial approval or disapproval, by October 29, 2025.

9. Defendants shall take final action on Rule 3172, by full or partial approval or disapproval, by September 13, 2025.

10. Defendants shall take final action on Rule 3173, by full or partial approval or disapproval, by September 13, 2025.

11. To date, Defendants have failed to take final action on the Contingency Measure Plan, Rule 3172, and Rule 3173.

## JURISDICTION

12. This Court has jurisdiction over this action to compel the performance nondiscretionary duties pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

13. The declaratory and injunctive relief Air Advocates request is authorized by 28 U.S.C. §§ 2801(a) and 2202, and 42 U.S.C. § 7604.

## NOTICE

14. On November 3, 2025, Air Advocates provided Defendants EPA, Zeldin, and Martucci written notice of the claims stated in this action at least 60 days before commencing this action (hereafter "Notice Letter"), as required by Clean Air Act section 304(b)(2), 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.2 and 54.3. A copy of the Notice Letter, sent by certified mail, return receipt requested, is attached as Exhibit 1. Although more than 60 days have elapsed since Air Advocates provided written notice, EPA has failed to take final action on the Contingency Measure Plan, Rule 3172, and Rule 3173. EPA has violated and continues to violate the Clean Air Act.

///

///

COMPLAINT

**VENUE**

15.     Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1), because the Acting Regional Administrator for Region 9 is located in San Francisco County and because EPA's alleged violations relate to the duties of the Regional Administrator in San Francisco.

**INTRADISTRICT ASSIGNMENT**

16.     Because the failure to perform a nondiscretionary duty alleged in this Complaint relates to the duties of the Acting Regional Administrator located in San Francisco County, assignment to the San Francisco Division or the Oakland Division of this Court is proper under Civil L.R. 3-2(c) and (d).

**PARTIES**

17.     Plaintiff COMMITTEE FOR A BETTER ARVIN is a nonprofit corporation organized and existing under the laws of the State of California, and based in Arvin, California. COMMITTEE FOR A BETTER ARVIN brings this action on behalf of itself and its members. The mission of COMMITTEE FOR A BETTER ARVIN is to improve the quality of life in Arvin, to inform and unite the community, to address problems facing the community, and to secure equality for all residents. COMMITTEE FOR A BETTER ARVIN and its members have advocated for improved local and regional air quality for many years.

18.     Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR is a nonprofit organization organized and existing under the laws of the State of California, and based in Fresno, California. MEDICAL ADVOCATES FOR HEALTHY AIR brings this action on behalf of itself and its members. MEDICAL ADVOCATES FOR HEALTHY AIR's members consist of medical professionals living in the San Joaquin Valley who regularly treat patients suffering from respiratory ailments that are caused or exacerbated by the Valley's unhealthy levels of air pollution. The mission of MEDICAL ADVOCATES FOR HEALTHY AIR is to advocate for the expeditious attainment of state and federal health-based air quality standards in the San Joaquin Valley through public education, litigation, and other means.

19.     Plaintiff SIERRA CLUB is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in San Francisco, California. SIERRA CLUB brings this action on behalf of itself and its members. As a national organization dedicated to the

protection of public health and the environment, including air quality, SIERRA CLUB has members living in all eight counties comprising the San Joaquin Valley.

20. Plaintiffs COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB are persons within the meaning of section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

21. The Clean Air Act violations alleged in this Complaint have injured and continue to injure Air Advocates' members.

22. Members of Plaintiffs COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR and SIERRA CLUB live, raise their families, work, and recreate in the San Joaquin Valley. They are adversely affected by exposure to levels of ozone and PM2.5 air pollution that exceed the health-based National Ambient Air Quality Standards. The adverse effects of such pollution include actual or threatened harm to their health, their families' health, their professional, educational, and economic interests, and their aesthetic and recreational enjoyment of the environment in the San Joaquin Valley.

23. Members of Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR are medical professionals who treat patients suffering from ozone and PM2.5 related health effects, have participated in substantial research on the health effects of ozone and PM2.5, and are concerned about the adverse health effects that ozone and PM2.5 have on their patients, sensitive groups, and the public.

24. EPA's failure to take action on the Contingency Measure Plan, Rule 3172, and Rule 3173 as alleged in this Complaint deprives Air Advocates' members of certain procedural rights associated with EPA's required action on the Contingency Measure Plan, Rule 3172, and Rule 3173, including notice of, and opportunity to comment on, EPA's proposed actions and judicial review to challenge any EPA final actions.

25. EPA's failure to take final action on the Contingency Measure Plan as alleged in this Complaint causes Air Advocates members' injuries because Defendants have failed to implement the Clean Air Act's remedial scheme, including ensuring the contingency measures for the 2008 8-hour ozone standard and 2015 8-hour ozone standard meet all Clean Air Act requirements and provide the

COMPLAINT
4

amount of nitrogen oxides ("NOx") and volatile organic compound ("VOC") emissions reductions required by the Clean Air Act.

26. EPA's failure to take final action on Rule 3172 and Rule 3173 as alleged in this Complaint causes Air Advocates members' injuries because Defendants have failed to implement the Clean Air Act's remedial scheme, including ensuring Rule 3172 and Rule 3173 meet all Clean Air Act requirements, including enforceable requirements for all major stationary sources of NOx and VOC to pay all fees for NOx and VOC emissions as required by the Clean Air Act.

27. A failure to attain the 2008 8-hour ozone standard and the 2015 8-hour ozone standard is reasonably foreseeable given the historical record of ozone design value data and repeated failures to attain the National Ambient Air Quality Standards in the San Joaquin Valley.

28. The injunctive relief requested in this lawsuit would redress members' injuries by compelling Defendants to take final action on the Contingency Measure Plan. Such action on the Contingency Measure Plan would ensure the contingency measures comply with all applicable requirements of the Clean Air Act and provide the NOx and VOC emissions reductions required by the Clean Air Act.

29. The injunctive relief requested in this lawsuit would further redress members' injuries by compelling Defendants to take final action on Rule 3172 and Rule 3173. Such action on Rule 3172 and Rule 3173 would ensure the rules comply with all applicable requirements of the Clean Air Act and require all fees from all major stationary sources of NOx and VOC for all emissions as mandated by the Clean Air Act.

30. The injunctive relief requested in this lawsuit would redress members' procedural injuries by providing notice and an opportunity to comment on EPA's proposed action to approve, disapprove, or approve in part and disapprove in part, the Contingency Measure Plan.

31. The injunctive relief requested in this lawsuit would redress members' procedural injuries by compelling EPA to take final action on the Contingency Measure Plan, Rule 3172, and Rule 3173. EPA final action will allow Air Advocates to secure any necessary judicial review as provided by Clean Air Act section 307(b)(1), 42 U.S.C. § 7607(b)(1).

32. The declaratory relief requested in this lawsuit would redress Air Advocates members'

COMPLAINT

5

1  injuries by declaring that Defendants have a duty to take final action on the Contingency Measure Plan,
2  Rule 3172, and Rule 3173. Declaratory relief would further redress these injuries by declaring that
3  Defendants have violated those duties.

4    33. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the
5  federal agency Congress charged with implementation and enforcement of the Clean Air Act. As
6  described below, the Act assigns to the UNITED STATES ENVIRONMENTAL PROTECTION
7  AGENCY certain nondiscretionary duties.

8    34. Defendant LEE ZELDIN is sued in his official capacity as Administrator of the United
9  States Environmental Protection Agency. LEE ZELDIN is charged in that role with taking various
10 actions to implement and enforce the Clean Air Act, including the actions sought in this Complaint.

11   35. Defendant MICHAEL MARTUCCI is sued in his official capacity as Acting Regional
12 Administrator for Region 9 of the United States Environmental Protection Agency. MICHAEL
13 MARTUCCI is responsible for implementing and enforcing the Clean Air Act in Region 9, including the
14 actions sought in this Complaint. Region 9 includes California and the San Joaquin Valley air basin.

**STATUTORY FRAMEWORK**

16   36. The Clean Air Act establishes a partnership between EPA and the states for the
17 attainment and maintenance of the National Ambient Air Quality Standards. *See* 42 U.S.C. §§ 7401-
18 7515. Under the Act, EPA has set health-based standards for six pollutants, including ozone and PM2.5.
19 States must adopt a State Implementation Plan ("SIP") that contains enforceable emissions limitations
20 necessary to attain the standards and meet applicable requirements of the Act. 42 U.S.C. §§ 7401(a)(1),
21 (a)(2)(A); 7502(c)(6). States must submit all such plans and plan revisions to the EPA. 42 U.S.C. §
22 7410(a)(1).

23   37. State Implementation Plans must include enforceable emissions standards and limitations
24 necessary to attain the NAAQS by the applicable attainment date, must demonstrate reasonable further
25 progress, and must include contingency measures to take effect if the plan fails to meet reasonable
26 further progress or attain the NAAQS by the applicable attainment date. 42 U.S.C. § 7502(c).

27   38. State Implementation Plans must demonstrate that the state's control strategy will ensure
28 attainment of the standard by the applicable attainment deadline. *See* 42 U.S.C. § 7511a(c)(2)(A); *see*

COMPLAINT
6

*also* 40 C.F.R. § 51.112(a) ("Each plan must demonstrate that the measures, rules, and regulations contained in it are adequate to provide for the timely attainment and maintenance of the national standard that it implements.").

39. A State Implementation Plan must demonstrate reasonable further progress by showing that the emission inventory for the area continues to decline according to milestones every three years. 42 U.S.C. § 7511a(c)(2)(B). Such demonstration must show emissions reductions of at least three percent of baseline emissions of NOx or VOC each year or less than three percent if a state demonstrates certain conditions have been met. 42 U.S.C. §§ 7511a(c)(2)(B)(i), (ii), 7511a(c)(2)(C).

40. A State Implementation Plan must include contingency measures that take effect without any further action by the state. 42 U.S.C. § 7502(c)(9).

41. The Clean Air Act requires implementation of contingency measures upon the failure of an area to make reasonable further progress, attain a NAAQS by the applicable attainment date, or fails to meet any applicable milestone. 42 U.S.C. §§ 7502(c)(9), 7511a(c)(9).

42. The contingency measures in the Contingency Measure Plan take effect upon an EPA finding that the San Joaquin Valley fails to make reasonable further progress, fails to attain a NAAQS by the applicable attainment date, or fails to meet any applicable milestone.

43. A State Implementation Plan for a severe or extreme ozone nonattainment area must include provisions which provide for a fee on each major stationary source of VOC and NOx when such area fails to attain an ozone standard by the applicable attainment date. 42 U.S.C. § 7511d.

44. Section 185 of the Clean Air Act requires a per ton fee on each major stationary source of VOC and NOx for each calendar year following the attainment date until EPA takes final action to designate the area in attainment with the applicable ozone standard. 42 U.S.C. § 7511d.

45. Rule 3172 and Rule 3173 take effect upon an EPA finding that the San Joaquin Valley has failed to attain the 2008 8-hour ozone standard or the 2015 8-hour ozone standard, respectively.

46. Within 60 days of EPA's receipt of a proposed State Implementation Plan or SIP revision, the Clean Air Act requires EPA to determine whether the submission is sufficient to meet the minimum criteria established by EPA. 42 U.S.C. § 7410(k)(1)(B). If EPA fails to make this "completeness" finding, the proposed SIP revision becomes complete by operation of law six months

COMPLAINT

7

after a state submits the revision. If EPA determines that the proposed SIP revision does not meet the minimum criteria, the state is considered to have not made the submission. 42 U.S.C. 7410(k)(1)(C).

47. Within twelve months of an EPA finding that a proposed State Implementation Plan or SIP revision is complete (or deemed complete by operation of law), EPA must act to approve, disapprove, or approve in part and disapprove in part, the submission. 42 U.S.C. § 7410(k)(2).

48. If EPA disapproves the State Implementation Plan or SIP revision, in whole or in part, then the Clean Air Act requires EPA to impose sanctions against the offending state or region, including increased offsets for new and modified major stationary sources or a prohibition on the use of federal highway funds, unless the state submits revisions within 18 months. 42 U.S.C. §§ 7509(a), (b). EPA must impose both offsets and highway funding sanctions within 24 months unless the state has corrected the deficiency. Moreover, the Act requires EPA to promulgate a Federal Implementation Plan within 24 months of disapproval unless the state has corrected the deficiency, and EPA has approved the revision. 42 U.S.C. § 7410(c).

49. Once EPA approves a State Implementation Plan or SIP revision, the state and any regulated person must comply with the emissions standards and limitations contained in the SIP, and all such standards and limitations become enforceable as a matter of federal law by EPA and citizens. 42 U.S.C. § 7413; 7604(a), (f).

50. If EPA fails to perform a non-discretionary duty, including failing to take final action on a proposed State Implementation Plan or SIP revision by the Clean Air Act deadline, then the Act allows any person to bring suit to compel EPA to perform its non-discretionary duty. 42 U.S.C. § 7604(a)(2).

## FACTUAL BACKGROUND

### Ozone Background

51. Ground-level ozone is formed by a reaction between NOx and VOC in the presence of heat and sunlight. Unlike ozone in the upper atmosphere which is formed naturally and protects the Earth from ultraviolet radiation, ozone at ground level is primarily formed from anthropogenic pollution.

52. Short-term exposure to ozone irritates lung tissue, decreases lung function, exacerbates respiratory disease such as asthma and Chronic Obstructive Pulmonary Disease (COPD), increases susceptibility to respiratory infections such as pneumonia, all of which contribute to an increased

COMPLAINT
8

likelihood of emergency department visits and hospitalizations. Short-term exposure to ozone also increases the risk of premature death, especially among older adults. Long-term exposure to ozone causes asthma in children, decreases lung function, damages the airways, leads to development of COPD, and increases allergic responses.

53. According to the American Lung Association's State of the Air 2025 report, the San Joaquin Valley counties of Tulare, Kern, and Fresno rank as the fourth, fifth, and seventh most ozone-polluted counties in the United States, respectively.

54. On July 18, 1997, EPA promulgated a national primary ozone NAAQS of 0.080 parts per million averaged over an 8-hour period to replace the less stringent 1-hour ozone NAAQS ("1997 8-hour ozone standard"). 62 Fed. Reg. 38856 (July 18, 1997); 40 C.F.R. § 50.9(b) (2003).

55. Effective December 10, 2001, EPA found that the San Joaquin Valley failed to attain the 1-hour ozone standard by the November 15, 1999 attainment date. 66 Fed. Reg. 56476 (Nov. 8, 2001).

56. Effective May 27, 2008, EPA completed a review of the 1997 8-hour ozone standard, found it necessary to lower the allowable ambient concentration of ozone to 0.075 parts per million, and promulgated the national primary NAAQS for ozone ("2008 8-hour ozone standard"). 73 Fed. Reg. 16436 (March. 27, 2008); 40 C.F.R. § 50.15. EPA revoked the 1997 8-hour ozone standard as part of the transition to the 2008 standard, but retained the attainment contingency measures and the major stationary source fee requirement for the 1997 8-hour ozone standard as controls to help ensure attainment of the 2008 8-hour ozone standard. 40 C.F.R. §§ 51.1100(o)(13), (15), 51.1105(a)(1).

57. Effective June 4, 2010, EPA reclassified the San Joaquin Valley to an extreme ozone nonattainment area for the 1997 8-hour ozone standard and established June 15, 2024 as the applicable attainment date. 75 Fed. Reg. 24409, 24415 (May 5, 2010).

58. Effective January 30, 2012, EPA found that the San Joaquin Valley failed to attain the 1-hour ozone standard by the November 15, 2010 attainment date. 76 Fed. Reg. 82133 (December 30, 2011).

59. Effective July 20, 2012, EPA designated the San Joaquin Valley as an extreme nonattainment area for the 2008 8-hour ozone standard. 77 Fed. Reg. 30088, 30092 (May 21, 2012); 40 C.F.R. § 51.1103(d). As an extreme nonattainment area, the Valley must attain the standard as

expeditiously as practicable but no later than July 20, 2032. 40 C.F.R. § 51.1103(a); 80 Fed. Reg. 12264, 12268 (March 6, 2015).

60. Effective December 28, 2015, EPA revised "the level of the [8-hour ozone] standard to 0.070 ppm to provide increased public health protection against health effects associated with long- and short-term exposures" and promulgated the national primary NAAQS for ozone ("2015 8-hour ozone standard"). 80 Fed. Reg. 65292, 65294 (Oct. 26, 2015); 40 C.F.R. § 50.19.

61. Effective August 3, 2018, EPA classified the San Joaquin Valley as an extreme nonattainment area for the 2015 8-hour ozone standard and established an August 3, 2038 attainment date. 83 Fed. Reg. 25776 (June 4, 2018).

62. On March 13, 2024, the California Air Resources Board submitted Rule 3172 and Rule 3173 to EPA as a SIP revision.

63. By letter dated April 26, 2024, the California Air Resources Board submitted the Contingency Measure Plan to EPA as a SIP revision.

64. On April 29, 2024, the California Air Resources Board submitted the Contingency Measure Plan to EPA as a SIP revision, according to the SPeCS for SIPs Public Element Dashboard.

65. On October 25, 2024, EPA published a proposed rule in the *Federal Register* to approve the Contingency Measure Plan as it relates to the 2008 8-hour ozone standard in the San Joaquin Valley. 89 Fed. Reg. 85119 (Oct. 25 2024).

66. On November 25, 2024, Plaintiffs COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB submitted comments on EPA's proposed approval of the Contingency Measure Plan as it relates to the 2008 8-hour ozone standard in the San Joaquin Valley. The comments are available as part of the rulemaking docket at https://www.regulations.gov/docket/EPA-R09-OAR-2024-0338 and attached as Exhibit 2.

67. Effective October 27, 2025, EPA found that the San Joaquin Valley failed to attain the 1997 8-hour ozone standard by the December 15, 2024 attainment date. 90 Fed. Reg. 46065 (Sept. 25, 2025).

68. On December 11, 2025, EPA published a proposed rule in the *Federal Register* to approve Rule 3172 and Rule 3173. 90 Fed. Reg. 57414 (Dec. 11, 2025).

69. On January 12, 2026, Plaintiffs COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB submitted comments on EPA's proposed approval of Rules 3172 and 3173. The comments are available as part of the rulemaking docket at https://www.regulations.gov/docket/EPA-R09-OAR-2025-1938 and attached as Exhibit 3.

70. The San Joaquin Valley has not attained the 2008 8-hour ozone standard. EPA data show 8-hour ozone design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, 2021-2023, and 2022-2024 at 0.088 ppm, 0.093 ppm, 0.093 ppm, 0.094 ppm, 0.090 ppm, and 0.088 ppm, respectively, well above the 0.075 ppm design value necessary to attain the 2008 8-hour ozone standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 4.

71. The San Joaquin Valley has not attained the 2015 8-hour ozone standard. EPA data show 8-hour ozone design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, 2021-2023, and 2022-2024 at 0.088 ppm, 0.093 ppm, 0.093 ppm, 0.094 ppm, 0.090 ppm, and 0.088 ppm, respectively, well above the 0.070 ppm design value necessary to attain the 2015 8-hour ozone standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 5.

**Fine Particulate Matter (PM2.5) Background**

72. PM2.5 is a directly emitted pollutant and forms secondarily in the atmosphere by the precursor pollutants NOx, ammonia, sulfur oxides, and VOC. Secondary PM2.5 forms primarily during the winter in the San Joaquin Valley.

73. Short-term exposure to PM2.5 pollution causes premature death, causes decreased lung function, exacerbates respiratory disease such as asthma, and causes increased hospital admissions. Long-term exposure causes development of asthma in children, causes decreased lung function growth in children, exacerbates respiratory disease such as asthma, increases the risk of death from cardiovascular disease, and increases the risk of death from heart attacks. Individuals particularly sensitive to PM2.5 exposure include older adults, people with heart and lung disease, and children.

74. According to the American Lung Association's State of the Air 2025 report, the San Joaquin Valley counties of Kern, Tulare, Fresno, and Kings rank as the first, third, fifth, and sixth most

polluted counties in the United States for short-term exposure to PM2.5, respectively. For long-term exposure to PM2.5, the report ranks Kern, Tulare, Fresno, Kings, and Stanislaus as the first, second, third, fifth, and eighth most polluted counties in the United States, respectively.

75. On July 18, 1997, the EPA established the national primary annual PM2.5 NAAQS of 15 µg/m$^3$ ("1997 annual PM2.5 standard") after considering evidence from "numerous health studies demonstrating that serious health effects" occur from exposures to PM2.5. *See* 81 Fed. Reg. 6936 (February 9, 2016); *see also* 62 Fed. Reg. 38652 (July 18, 1997); 40 C.F.R. § 50.7.

76. In 2006, to better protect the public from short-term exposures, EPA increased the stringency of the national primary annual 24-hour PM2.5 NAAQS by lowering the allowable ambient concentration from 65 µg/m$^3$ to 35 µg/m$^3$. 71 Fed. Reg. 61144, 61145 (Oct. 17, 2006) ("2006 24-hour PM2.5 standard").

77. Effective March 18, 2013, the EPA strengthened the national primary annual PM2.5 NAAQS by lowering the level from 15.0 µg/m$^3$ to 12.0 µg/m$^3$ ("2012 annual PM2.5 standard"). 78 Fed. Reg. 3086 (Jan. 13, 2013); 40 C.F.R. § 50.18.

78. The San Joaquin Valley is a serious PM2.5 nonattainment area for the 1997 annual PM2.5 standard, the 2006 24-hour standard, and the 2012 annual PM2.5 standard.

79. Effective December 23, 2016, EPA found that the San Joaquin Valley failed to attain the 1997 24-hour PM2.5 standard and the 1997 annual PM2.5 standard by the December 31, 2015 attainment date. 81 Fed. Reg. 84481 (November 23, 2016).

80. Effective December 27, 2021, EPA disapproved the SIP revision for the 1997 annual PM2.5 standard because design value data for the San Joaquin Valley showed the Valley had already failed to attain the standard by the December 31, 2020 attainment date. 86 Fed. Reg. 67329 (Nov. 26, 2021).

81. The San Joaquin Valley has not attained the 2012 annual PM2.5 standard. EPA data show PM2.5 design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, 2021-2023, and 2022-2024 at 16.9 µg/m$^3$, 20.3 µg/m$^3$, 18.8 µg/m$^3$, 18.8 µg/m$^3$, 16.2 µg/m$^3$, and 14.7 µg/m$^3$, respectively, well above the 12 µg/m$^3$ design value necessary to attain the 2012 annual PM2.5 standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and

COMPLAINT

attached as Exhibit 6.

82. The San Joaquin Valley has not attained the 2006 24-hour PM2.5 standard. EPA data show PM2.5 design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, 2021-2023, and 2022-2024 at 64 μg/m$^3$, 72 μg/m$^3$, 66 μg/m$^3$, 65 μg/m$^3$, 48 μg/m$^3$, and 48 μg/m$^3$ respectively, well above the 35 μg/m$^3$ design value necessary to attain the 2006 24-hour PM2.5 standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 7.

**FIRST CLAIM FOR RELIEF**

**Failure to Perform a Non-Discretionary Duty**

**to Act on the Contingency Measure Plan**

**(42 U.S.C. § 7410(k)(2))**

83. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-82.

84. On April 29, 2024, the California Air Resources Board submitted the Contingency Measure Plan to EPA as a SIP revision, according to the SPeCS for SIPs Public Element Dashboard.

85. The Contingency Measure Plan relies on San Joaquin Valley Unified Air Pollution Control District Rule 4601 (Architectural Coatings) to meet contingency measure requirements for the 2008 8-hour ozone standard and the 2015 8-hour ozone standard.

86. The Contingency Measure Plan relies on the California Smog Check Contingency Measure State Implementation Plan Revision to meet contingency measure requirements for the 2008 8-hour ozone standard and the 2015 8-hour ozone standard.

87. The Contingency Measure Plan includes a commitment by the California Air Resources Board and the San Joaquin Valley Unified Air Pollution Control District to adopt five additional contingency measures for the Architectural Coatings Rule, Surface Coating of Metal Parts and Products Rule, Can and Coil Coatings Rule, Adhesives and Sealants Rule, and Solvent Cleaning Rule.

88. On October 16, 2024, EPA found the Contingency Measure Plan complete with respect to the 2008 8-hour ozone standard according to the SPeCS for SIPs Public Element Dashboard.

89. On October 29, 2024, the Contingency Measure Plan became complete by operation of law with respect to the 2015 8-hour ozone standard. The SPeCS for SIPs Public Element Dashboard

reflects this completeness date.

90. Defendants have a mandatory duty to act on the Contingency Measure Plan with respect to the 2008 8-hour ozone standard no later than October 16, 2025. 42 U.S.C. § 7410(k)(2).

91. Defendants have a mandatory duty to act on the Contingency Measure Plan with respect to the 2015 8-hour ozone standard no later than October 29, 2025. 42 U.S.C. § 7410(k)(2).

92. Defendants have failed and continue to fail to act on the Contingency Measure Plan with respect to the 2008 8-hour ozone standard and the 2015 8-hour ozone standard.

93. By failing to act on the Contingency Measure Plan with respect to the 2008 8-hour ozone standard, Defendants have violated and continue to violate its nondiscretionary duty to act on the Contingency Measure Plan pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

94. By failing to act on the Contingency Measure Plan with respect to the 2015 8-hour ozone standard, Defendants have violated and continue to violate its nondiscretionary duty to act on the Contingency Measure Plan pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

95. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). Defendants' violation of the Act is ongoing and will continue unless remedied by this Court.

## SECOND CLAIM FOR RELIEF

## Failure to Perform a Non-Discretionary Duty

## to Act on Rule 3172

## (42 U.S.C. § 7410(k)(2))

96. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-95.

97. On March 13, 2024, CARB submitted Rule 3172 as a SIP revision to EPA. 90 Fed. Reg. 57414 Table 1 (Dec. 11, 2024).

98. On September 13, 2024, Rule 3172 became complete by operation of law.

99. Defendants have a mandatory duty to act on Rule 3172 no later than September 13, 2025. 42 U.S.C. § 7410(k)(2).

100. Defendants have failed and continue to fail to act on Rule 3172.

COMPLAINT

14

101. By failing to act on Rule 3172, Defendants have violated and continues to violate its nondiscretionary duty to act on Rule 3172 pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

102. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). Defendants' violation of the Act is ongoing and will continue unless remedied by this Court.

## THIRD CLAIM FOR RELIEF

### Failure to Perform a Non-Discretionary Duty to Act on Rule 3173

### (42 U.S.C. § 7410(k)(2))

103. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-102.

104. On March 13, 2024, CARB submitted Rule 3173 as a SIP revision to EPA. 90 Fed. Reg. 57414 Table 1 (Dec. 11, 2024).

105. On September 13, 2024, Rule 3173 became complete by operation of law.

106. Defendants have a mandatory duty to act on Rule 3173 no later than September 13, 2025. 42 U.S.C. § 7410(k)(2).

107. Defendants have failed and continue to fail to act on Rule 3173.

108. By failing to act on Rule 3173, Defendants have violated and continues to violate its nondiscretionary duty to act on Rule 3173 pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

109. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). Defendants' violation of the Act is ongoing and will continue unless remedied by this Court.

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

A. DECLARE that Defendants have a duty to act on the Contingency Measure Plan with respect to the 2008 8-hour ozone standard by October 16, 2025;

B. DECLARE that Defendants have a duty to act on the Contingency Measure Plan with respect to the 2015 8-hour ozone standard by October 29, 2025;

C. DECLARE that Defendants have a duty to act on Rule 3172 and Rule 3173 by September 13, 2025;

D. DECLARE that Defendants have violated and continue to violate the Clean Air Act by failing to act on the Contingency Measure Plan, Rule 3172, and Rule 3173;

E. ISSUE preliminary and permanent injunctions directing the Defendants to act on the Contingency Measure Plan with respect to the 2008 8-hour ozone standard by April 21, 2026;

F. ISSUE preliminary and permanent injunctions directing the Defendants to act on the Contingency Measure Plan with respect to the 2015 8-hour ozone standard by July 17, 2026;

G. ISSUE preliminary and permanent injunctions directing the Defendants to act on Rule 3172 and Rule 3173 by July 17, 2026;

H. RETAIN jurisdiction over this matter until such time as the Defendants have complied with their nondiscretionary duties under the Clean Air Act;

I. AWARD to Plaintiffs their costs of litigation, including reasonable attorney's and expert witness fees; and

J. GRANT such additional relief as the Court may deem just and proper.

Dated: January 21, 2026

Respectfully Submitted,

LAW OFFICE OF BRENT J. NEWELL

/s/ Brent J. Newell
Brent J. Newell
Attorney for Plaintiffs

COMPLAINT

16